**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

NAVEED KHAN,

          Plaintiff,

v.                                                                          Case No. 1:25-cv-1064

DEPUY SYNTHES, INC., *et al.*

          Defendants.

## BRIEF IN SUPPORT OF NUVASIVE, LLC'S MOTION TO DISMISS

Plaintiff Naveed Khan alleges he was assisting with a spinal surgery at the INOVA Loudoun Hospital, in which various unidentified "instruments, implants, and other surgical devices" allegedly provided by DePuy Synthes ("DePuy") and by NuVasive, LLC fka NuVasive, Inc. ("NuVasive") were used. At some point, Khan claims a rod cutter manufactured by either DePuy or NuVasive—he does not specify which one—broke and struck him in the face and nose, causing permanent injuries. Khan fails to articulate how this rod cutter broke; he simply claims it was defective without more. Against that backdrop, Khan asserts claims against DePuy and NuVasive for strict product liability, negligence, and breach of warranty.

Khan's Complaint, however, suffers from a glaring, overarching flaw—he provides absolutely no detail to support his conclusory allegations of defect. Indeed, his Complaint consists of nothing more than bare legal conclusions. As such, Khan's Complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6), and the Court should grant NuVasive's motion to dismiss.

1

## BACKGROUND

Khan alleges that on February 28, 2023, and/or March 1, 2023, he was assisting Dr. George Ibrahim with a spinal fusion surgery at INOVA Loudoun Hospital. (Compl. ¶ 2 Factual Background, ECF No. 1-1.)[1] During this surgery, Dr. Ibrahim used "instruments, implants, and other surgical devices provided by" DePuy and NuVasive. (*Id.*) One of these devices was a "rod cutter manufactured and distributed by" DePuy or NuVasive. (*Id.*) Khan claims that during the surgery, the rod cutter "broke, and shot up like a bullet which struck the face and lodged in the nose of the Plaintiff," causing him "severe lifelong facial, nasal, and neurological trauma" as well as "long-term and permanent physical pain, disfigurement, neurological, mental, emotional distress, medical expenses," including surgery "to correct the disfigurement, and other damages and expenses." (*Id.*) Khan brings three claims against DePuy and NuVasive: Count I for strict liability "for the defective rod cutter, and information that caused Plaintiff's injuries"; Count II for negligence "in the information, design, manufacture, and distribution of the rod cutter"; and Count III for breach of warranty for "express and implied warranties regarding the safety and fitness of the rod cutter." (*Id.* ¶ 4.) Khan seeks compensatory and punitive damages. (*Id.* ¶ 5.)

## LEGAL STANDARD

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts all well-pled factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.23d 250, 253 (4th Cir. 2009). Because Khan is *pro se*, his Complaint "is to be liberally construed" and "held to [a] less stringent standard[] than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89,

---

[1] For purposes of this Motion to Dismiss only, all well-pleaded factual allegations in the Complaint are accepted as true.

94 (2007). That said, even for a *pro se* plaintiff, a complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do*." Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a complaint must be dismissed if the plaintiff cannot "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## ARGUMENT

It is evident from the allegations in Khan's Complaint, threadbare as they are, that this is a products liability case. Virginia[2] products liability law recognizes three theories of defect—design, manufacturing, and warnings. *See, e.g.*, *Powell v. Diehl Woodworking Mach., Inc.*, 198 F. Supp. 3d 628, 633 (E.D. Va. 2016). The Complaint, however, fails to state a claim under any one of these theories. Additionally, and given Khan's *pro se* status, to the extent the Court construes his Count III for breach of warranty to go beyond a pure products liability theory (which it should not), that too fails to state a claim. Nor has Khan sufficiently pled an entitlement to punitive damages. As such, the Court should grant NuVasive's motion.

---

[2] Because this Court is sitting in diversity, it applies the substantive law of the forum, i.e., Virginia, including as to choice-of-law. *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 496 (1941). Virginia applies "the substantive law of the place of the wrong (*lex loci delicti*)" to a plaintiff's claims. *Dodson v. C.R. Bard, Inc.*, No. 3:20-cv-596, 2020 WL 7647631, at *3 n.1 (E.D. Va. Dec. 23, 2020). Here, Khan alleges that he sustained his injuries in Virginia. (Compl. ¶ 2 Factual Background.) Accordingly, Virginia law applies.

I.     **The Complaint fails to state a claim under any viable products liability theory.**

To begin, Khan does not specifically identify the product at issue; instead, he names two distinct entities and says one of them is responsible. (*See generally* Compl.) Of course, if the rod cutter at issue was not manufactured or sold by NuVasive, then all Khan's claims against it must fail. *See, e.g.*, *Bilenky v. Ryobi Techs.*, 666 F. App'x 271, 274 (4th Cir. 2016) (per curiam) ("In Virginia, a plaintiff can impose liability on a manufacturer or seller of a defective product if the product is unreasonably dangerous for its ordinary or reasonably foreseeable use and the unreasonably dangerous condition existed when the product left the defendant's hands."). Thus, for purposes of this motion only, NuVasive assumes—but does not concede—that the rod cutter at issue was manufactured and/or sold by it.

A.     **Count I for strict liability must be dismissed.**

Unlike many other states, "Virginia has not adopted a strict liability regime for products liability." *Evans v. Nacco Materials Handling Grp., Inc.*, 810 S.E.2d 462, 469 (Va. 2018). Simply put, then, Count I must be dismissed with prejudice. *See, e.g.*, *Henderson v. Boston Scientific Corp.*, No. 3:20-cv-659, 2021 WL 3465074, at \*3 (E.D. Va. Aug. 6, 2021) (finding, in a medical device case, that "strict liability claims fail as a matter of law" because "Virginia law does not permit tort recovery on a strict liability theory in products liability cases" (quote omitted)); *Porter v. DePuy Orthopaedics, Inc.*, No. 3:19-cv-7, 2019 WL 3979656, at \*4 (E.D. Va. Aug. 6, 2019) (granting motion to dismiss the plaintiff's strict liability claims in medical device case because "the Virginia Supreme Court has not adopted a strict liability scheme in products liability cases"), *R. & R. adopted by* 2019 WL 3978407 (E.D. Va. Aug. 22, 2019); *Quillen v. Steri-Systems Corp.*, No. 1:04-cv-139, 2005 WL 387649, at \*1 (W.D. Va. Feb. 17, 2005) (same).

**B.    Count II for negligence and Count III for implied warranty of merchantability must be dismissed.**

**1.    An understanding of the Virginia products liability law regime reveals the Complaint's inadequate pleading.**

Product liability claims in Virginia can be brought under the legal theories of either negligence or breach of implied warranty of merchantability. *E.g.*, *Evans*, 810 S.E.2d at 469. The inquiry is essentially the same under either theory. *Logan v. Montgomery Ward & Co.*, 219 S.E.2d 685, 687 (Va. 1975) ("The standard of safety of goods imposed on the seller or manufacturer of a product is essentially the same whether the theory of liability is labeled warranty or negligence."); *also, e.g.*, *Benedict v. Hankook Tire Co., Ltd.*, 295 F. Supp. 3d 632, 637 (E.D. Va. 2018) ("The basic analytical framework applicable to products liability claims in Virginia is the same whether a plaintiff is bringing a negligence or breach of implied warranty action."). "In general, a products liability plaintiff must establish three elements: (1) the product must contain a defect which rendered it unreasonably dangerous for ordinary or foreseeable use; (2) the defect must have existed when it left the defendant's hands; and (3) the defect must have actually caused the plaintiff's injury." *Benedict*, 295 F. Supp. 3d at 637; *also, e.g.*, *Evans*, 810 S.E.2d at 469 (articulating the elements for a products liability claim); *Logan*, 219 S.E.2d at 687 (same).

With respect to the first element, Virginia recognizes only three kinds of "defects" for a product liability claim: manufacturing, design, and warnings.[3] *See, e.g.*, *Powell*, 198 F. Supp. 3d at 633 ("Virginia law only recognizes three products liability claims: negligent assembly or manufacture, negligent design, and failure to warn."); *Morgen Indus., Inc. v. Vaughan*, 471 S.E.2d

---

[3] To the extent Khan attempts to assert a products liability claim against NuVasive for allegedly negligent "distribution of the rod cutter," (Compl. ¶ 4, Count II), such a theory is not recognized in Virginia and thus it inherently fails. *See Powell*, 198 F. Supp. 3d at 633 (because Virginia only recognizes three kinds of product liability theories, "[b]y implication any other type of product-liability claim cannot succeed").

489, 492 (Va. 1996) ("A product is unreasonably dangerous if it is defective in assembly or manufacture, unreasonably dangerous in design, or unaccompanied by adequate warnings concerning its hazardous properties."). Further, to avoid being found defective, the product in question "must be fit for the ordinary purposes for which it is to be used." *Logan*, 219 S.E.2d at 687. In other words, a "manufacturer is under a duty to exercise ordinary care to design a product that is reasonably safe for the purpose for which it is intended." *Dorman v. State Indus.*, 787 S.E.2d 132, 139 (Va. 2016). A manufacturer, however, "is not an insurer of its product's safety." *Owens-Corning Fiberglas Corp. v. Watson*, 413 S.E.2d 630, 634 (Va. 1992). And there is no duty on a manufacturer "to supply an accident-free product." *Besser Co. v. Hansen*, 415 S.E.2d 138, 144 (Va. 1992); *also, e.g.*, *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993) ("The product need not incorporate the best or most highly-advanced safety devices."); *Dodson*, 2020 WL 7647631, at *3 ("Importantly, a manufacturer does not insure its product's safety, and need not supply an accident-proof product."); *Dorman*, 787 S.E.2d at 139 ("The manufacturer is not an insurer and is not required to design and market an accident-proof product."). Likewise, a manufacturer need only "give a reasonable warning, not the best possible one." *Dodson*, 2020 WL 7647641, at *6 (quoting *Pfizer, Inc. v. Jones*, 272 S.E.2d 43, 45 (Va. 1980)).

Moreover, Virginia courts do not conclude that a product is defective "[f]rom the mere happening of an accident." *Featherall v. Firestone Tire & Rubber Co.*, 252 S.E.2d 358, 367 (Va. 1979); *also, e.g.*, *Wilder v. Toyota Motor Sales, U.S.A., Inc.*, 23 F. App'x 155, 158 (4th Cir. 2001) (per curiam) ("The mere fact of an accident is not enough to establish the existence of a defect."); *Logan*, 219 S.E.2d at 687 ("The mere fact of an explosion does not establish the negligence of either the manufacturer or seller of the stove, and does not establish that the stove was defective."); *Pepsi-Cola Bottling Co. v. Yeatts*, 151 S.E.2d 400, 402 (Va. 1966) ("Negligence cannot be

6

presumed from the mere happening of an accident."). Rather, it is the plaintiff's burden to show causation, i.e., "that any alleged product defect was the cause of his injuries." *Evans v. Mentor Corp.*, No. 1:04-cv-1218, 2005 WL 1667661, at \*1 (E.D. Va. June 28, 2005); *also, e.g.*, *Yeatts*, 151 S.E.2d at 402 ("The burden is on the plaintiff who alleges negligence to produce evidence of preponderating weight from which the jury can find that the defendant was guilty of negligence which was a proximate cause of the accident."). And while there may be more than one proximate cause, "Virginia courts follow the 'but for' rule of proximate causation, under which a defendant is not liable unless the harm would not have occurred but for the defendant's act." *McCauley v. Purdue Pharma L.P.*, 331 F. Supp. 2d 449, 461 (W.D. Va. 2004); *see also Evans*, 2005 WL 1667661, at \*1 ("To succeed on a product liability claim under Virginia law, . . . [the] plaintiff must demonstrate that a product defect is the only reasonable explanation or cause of the complained-of injury.").

In short, "Virginia law considers a defendant to be negligent and to have violated the standard of care if it produces an unreasonably dangerous product," i.e., one with a defect in manufacture, design, or warnings that existed at the time it left the manufacturer's control, "that causes injury" to the plaintiff. *Benedict*, 295 F. Supp. 3d at 640.

### 2. Khan fails to state a product liability claim under any theory recognized by Virginia law.

"A manufacturing defect exists when a product fails to conform to its intended design." *Dodson*, 2020 WL 7647631, at \*4. So, to sufficiently state a claim based on a manufacturing defect, "the plaintiff must allege that the defendant did not make the product as intended," i.e., they must "articulate what went wrong in the manufacturing process and connect that to the detrimental effects caused by the device." *Id.*

7

Conversely, a "design defect exists when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design." *Id.* at \*5 (quote omitted). "To state a claim of negligent design, Plaintiff must contend that Defendant could have designed the product differently before putting it into the stream of commerce, or that such a design is even feasible." *Id.*

As for the third theory of liability, the Supreme Court of Virginia has explained that "a failure to warn claim is distinct from a manufacturing or a design defect claim," in that it is "concerned with how a lack of warning about a product, and the user's resultant lack of knowledge about the product's dangers or safe use, may give rise to an unreasonable danger to the consumer." *Evans*, 810 S.E.2d at 472 (quotation omitted). A warnings claim requires the plaintiff to establish that the defendant

> (1) knew or had reason to know that the product was or was likely to be dangerous for its intended use, (2) had no reason to believe that those for whose use the product was supplied would realize its dangerous condition, and (3) failed to exercise reasonable care to inform them of its dangerous condition or of the facts which made it likely to be dangerous.

*Dodson*, 2020 WL 7647631, at \*6.

The Complaint fails to sufficiently plead a claim under any theory.[4] Khan simply alleges, in conclusory fashion, that the rod cutter was defectively designed and manufactured, as well as defective because of its warnings (or lack thereof), because it injured him. (Compl. ¶ 4.) He does not provide any specifics about the product or the incident. Nor does he articulate any particular theory of product defect; rather, he just says it is so.

---

[4] Khan also alleges that the rod cutter was defective in "information," although he does not include any more detail or reference beyond that. (Compl. ¶ 4.) Given Khan's *pro se* status and the theories of liability recognized under Virginia law, NuVasive construes this allegation to be claiming that the rod cutter had allegedly defective warnings.

The shortcoming is self-evident—nothing in the Complaint sets forth any facts as to what was allegedly defective about the design and/or manufacture of the rod cutter or its accompanying warnings. Such allegations are nothing more than bare legal conclusions, which are not enough to survive a motion to dismiss. *E.g.*, *Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 505 (E.D. Va. 2013) ("A bare allegation of a 'defect' is no more than a legal conclusion." (collecting cases)); *also, e.g.*, *Twombly*, 550 U.S. at 555; *Dodson*, 2020 WL 7647631, at *4 ("[E]ven at the pleadings stage, a bare allegation of a defect is no more than a legal conclusion. This district has affirmed that the nature of the defect must be demonstrated to prove an actionable claim at the pleadings stage."); *Porter*, 2019 WL 3979656, at *8 (finding that the plaintiff did "not allege facts specifying a plausible defect in the [product's] manufacture or design, or in the warnings given" such that the motion to dismiss should be granted). Nor, as just explained, does the fact that Khan was allegedly injured by itself mean that the rod cutter was defective. *E.g.*, *Featherall*, 252 S.E.2d at 367. Thus, the Complaint does nothing more than state legal conclusions—i.e., the rod cutter was allegedly designed and manufactured defectively, and/or was defective in its warnings, and that such unidentified defects caused Khan's injuries. This is not enough to survive a motion to dismiss. *See, e.g.*, *Fields v. Jobar Int'l, Inc.*, No. 3:14-cv-50, 2014 WL 1513289, at *3–5 (E.D. Va. Apr. 16, 2014) (dismissing design, manufacturing, and warnings defect claims when the complaint consisted only of conclusory allegations of defect). Accordingly, NuVasive's motion should be granted as to Khan's product liability claims based on alleged manufacturing, design, and warnings defects.

## II.    The Complaint also fails to state an independent claim for breach of warranty.

In context, the most natural reading of the Complaint is that Khan is attempting to bring only products liability claims against NuVasive. With respect to Count III, then, while Khan could

bring a products liability claim for breach of implied warranty of merchantability, any other "warranty" claim would not be a proper legal theory. *See, e.g.*, *Evans*, 810 S.E.2d at 469 (explaining that when bringing a products liability claim, "a plaintiff may proceed under a theory of implied warranty of merchantability or negligence"). Non-products liability claims simply would not make sense here. Indeed, Khan does not allege that he bought the rod cutter and was economically harmed by its failure to conform with an applicable warranty; rather, he alleges that he was assisting with a spine surgery (he was not the patient) and in the course of that surgery he was injured when the rod cutter broke and hit him in the face.

But again, given his *pro se* status and out of an abundance of caution, NuVasive addresses the possibility that in Count III, Khan is attempting to bring a traditional warranty claim. (Compl. ¶ 4.) There are three kinds of such warranty claims possible in Virginia: express warranty, implied warranty of merchantability, and implied warranty of fitness for a particular purpose. But even when viewed in this light, the Complaint still fails to state a claim.

***Express Warranty.*** "The Virginia UCC provides that in certain circumstances a seller of goods creates express warranties, the breach of which may be enforced by the buyer." *Porter*, 2019 WL 3979656, at *9 (citing Va. Code § 8.2-313). "Under Virginia law, a breach of express warranty claims requires proof of two elements: (1) the existence of a warranty and (2) breach of that warranty." *Henderson*, 2021 WL 3465074, at *4. The Complaint comes nowhere close to sufficiently alleging these elements, as it fails to even identify the specific product, let alone any accompanying alleged express warranty. It thus fails to state an express warranty claim.

***Implied Warranty of Fitness for a Particular Purpose.*** "[T]o establish an implied warranty of fitness for a particular purpose, the buyer must prove as a threshold matter that he made known to the seller the particular purpose for which the goods were required." *Bayliner*

*Marine Corp. v. Crow*, 509 S.E.2d 499, 503 (Va. 1999). There are no allegations whatsoever regarding this kind of warranty, other than conclusory references to "implied warranties regarding the . . . fitness of the rod cutter." (Compl. ¶ 4.) Accordingly, the Complaint clearly does not state a viable warranty claim under this theory either.

*Implied Warranty of Merchantability.* Outside of the products liability context, there are other ways in which a product can be found unmerchantable that could theoretically give rise to an implied warranty claim. *See, e.g.*, *Benedict*, 295 F. Supp. 3d at 637 n.2 (citing Va. Code Ann. § 8.2-314). In such a context, whether a specific good is merchantable depends on whether it would "pass without objection in the trade" and is "fit for the ordinary purposes for which such goods are used." *Bayliner*, 509 S.E.2d at 503 (quoting Va. Code Ann. §§ 8.2-314(a), (c)). "The first phrase concerns whether a significant segment of the buying public would object to buying the goods, while the second phrase concerns whether the goods are reasonably capable of performing their ordinary functions." *Bayliner*, 509 S.E.2d at 503 (quotations omitted). Here, however, Khan's Complaint does not assert any allegations whatsoever, let alone well-pleaded ones, regarding these required elements of an implied warranty of merchantability claim. Nor does it provide any "explanation of the [rod cutter's] defective nature at the time it was manufactured or sold," such that it cannot survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Fields*, 2014 WL 1513289, at *5.

## III.   The Court should dismiss Khan's request for punitive damages.

Khan's request for punitive damages (Compl. ¶ 5) inherently fails because his underlying claims fail. *See, e.g.*, *Henderson*, 2021 WL 3465074, at *4. But to the extent that any of the underlying claims survive NuVasive's motion (which they should not), the request for punitive damages cannot.

11

The Supreme Court of Virginia has stated repeatedly that punitive damages are disfavored and, "because punitive damages are in the nature of a penalty, they should be awarded only in cases of the most egregious conduct." *Watson*, 413 S.E.2d at 639. The Supreme Court has explained that "the type of conduct which would support an award of punitive damages" requires a showing that the defendant "was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result." *Bowers v. Westvaco Corp.*, 419 S.E.2d 661, 668 (Va. 1992). Here, again, the Complaint does not include any allegations of conduct that would support a request for punitive damages; rather, it just requests the relief. This is not sufficient to survive the pleadings stage. *E.g.*, *Twombly*, 550 U.S. at 555; *cf. Sykes v. Bayer Pharms. Corp.*, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008) (denying leave to amend to add request for punitive damages because the proposed allegations were "conclusory," such that "it would be futile to add this" request).

## CONCLUSION

In sum, Khan claims he was injured when an allegedly defective rod cutter being used for a spinal surgery in which he was assisting the surgeon broke off and struck his face. But he does not identify the product or articulate any theory of defect, let alone a coherent one. Instead, he just conclusorily alleges that the rod cutter must have been defective. Such allegations, however, are not sufficient to state a claim under Virginia law. As such, the Court should grant NuVasive's motion to dismiss.

Dated: June 25, 2025                         Respectfully submitted,

                                   By:    /s/_____

12

Jason R. Hodge (VSB No. 90793)
*Attorney for Defendant NuVasive, LLC (fka NuVasive, Inc.)*
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1021 East Cary Street, Suite 2120
Richmond, VA 23219
Telephone: (804) 533-3891
Facsimile: (804) 616-4129
jason.hodge@nelsonmullins.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court and served via ECF on all counsel of record registered to receive service via the Court's CM/ECF system, and that the foregoing was also sent by FedEx to the following:

Naveed Khan
16491 Steerage Circle
Woodbridge, VA 22191
202-257-2469
*Pro Se Plaintiff*

/s/_____
Jason R. Hodge (VSB No. 90793)
*Attorney for Defendant NuVasive, LLC (fka NuVasive, Inc.)*
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1021 East Cary Street, Suite 2120
Richmond, VA 23219
Telephone: (804) 533-3891
Facsimile: (804) 616-4129
jason.hodge@nelsonmullins.com

14